UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF WYOMING

| | |
|---|---|
| REX FLOYD RAMMELL,<br><br>Plaintiff,<br><br>vs.<br><br>TY HUFFMAN,<br>*also known as* Sublette County Deputy Sheriff,<br><br>KENNETH C. LEHR,<br>*also known as* Sublette County Sheriff,<br>*also known as* K C Lehr,<br><br>Defendants. | Case No. 1:23-cv-00052-SAH |

## ORDER GRANTING DEFENDANTS'
## JOINT MOTION TO DISMISS

### I. MOTION PRESENTED

Plaintiff, Rex Rammell, filed an Amended Complaint in this matter on April 10, 2023, alleging 42 U.S.C. § 1983 civil right violations against Defendants, Ty Huffman and Kenneth C. Lehr. ECF No. 2. Rammell claims his Fourth Amendment rights under the United States Constitution were violated by Huffman and Lehr. ECF No. 2. He demands pecuniary damages for court costs, economic damages for business loss and lost opportunity, and punitive damages for damage to his reputation and severe emotional distress. *Id*. at 5.

In response, the Defendants filed a Joint Motion to Dismiss and supporting Memorandum. ECF Nos. 9, 10. Defendants request dismissal of the Amended Complaint [ECF No. 2] pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), utilizing the legal

1

theories of collateral estoppel, subject matter jurisdiction, the *Rooker-Feldman* doctrine, and qualified immunity. ECF No. 9 at 3.

Plaintiff's Response opposes dismissal and states, "[he] only wishes to be compensated for the damages done to his business, his reputation, and his emotional [well]being as a result of his Fourth Amendment Rights being violated." ECF No. 12 at 2; *see also* ECF No. 2 at 5. The Defendants' Joint Reply reiterates the legal theories of collateral estoppel, qualified immunity, and the *Rooker-Feldman* doctrine; and argue Plaintiff's claims in his 42 U.S.C. § 1983 pleading are barred from further litigation before this Court. ECF No. 13.[1]

Plaintiff subsequently filed a Motion for Hearing requesting oral argument on the Motion to Dismiss. ECF No. 17. Defendants filed a Response in Opposition to the request for oral argument and referenced Local Rule 7.1. ECF No. 19. This Court finds oral argument unnecessary, therefore the Motion for Hearing [ECF No. 17] is DENIED. The Motion to Dismiss shall be determined without oral argument and the Court shall make its ruling based on the information and documents provided in the Amended Complaint [ECF No. 2], Motion to Dismiss and memorandum [ECF Nos. 9, 10], Response [ECF No. 12], and Reply [ECF No. 13].

## II. STATEMENT OF THE CASE

The instant case originates from Huffman conducting a traffic stop on Rammell's vehicle and livestock trailer to review brand inspection permits for the movement of livestock, i.e., horses, across county lines. The Court will cover the pertinent facts herein and provide a brief overview of the underlying case between Plaintiff and the State of Wyoming, including the involvement of Defendants.[2]

---

[1] Plaintiff also filed a Second Supplemental Memorandum [ECF. No. 15] which was stricken by the Court [ECF No. 18]
[2] This Court takes judicial notice of the underlying facts established by the District Court of the State of Wyoming, Ninth Judicial District, Sublette County, in:

On the afternoon of June 27, 2019, Huffman, a deputy sheriff for Sublette County, Wyoming, pulled over a pickup truck with a 4-county plate pulling a South Dakota licensed livestock trailer. ECF No. 2 at 4; ECF No. 10-2 at 4; ECF No. 10-5 at 1; Wyoming Department of Transportation, County license plate prefixes, https://www.dot.state.wy.us/home/titles_plates_registration/prefixes.html ("Wyoming license plate numbers begin with a prefix number that designates the county in which the vehicle is registered." Sweetwater County plates carry a 4 prefix; Sublette County plates carry a 23 prefix.). Huffman relied on Wyo. Stat. Ann. § 11-21-103(a)[3] for stopping the truck and trailer and acknowledges no probable cause or reasonable suspicion of criminal activity, or knowledge of noncompliance with Wyoming's brand inspection requirements, prior to the stop. ECF No. 10-8 at 2.

The owner of the vehicle was identified as Rammell, a resident of Sweetwater County. The livestock trailer contained five horses. Huffman notified Rammell that movement of livestock across county lines required brand inspection paperwork under Wyo. Stat. Ann. § 11-21-102[4], and Rammell acknowledged the law but did not agree with it. ECF No. 2 at 4; ECF No. 10-2 at 4; ECF

---

(1) Order Reversing Circuit Court's Order in *State of Wyoming v. Rammell*, CV-8736 (July 17, 2020), ECF No. 10-5; and
(2) Order on Appeal from the Circuit Court of the Ninth Judicial District, Sublette County, State of Wyoming in *Rammell v. State of Wyoming*, 2021-CV-8861 (Sept. 30, 2022), ECF No. 10-8.

Matters of public record may be considered. See USCS Fed Rules Evid R 201; *Jackson-Mackay v. McDonald*, 2023 U.S. App. LEXIS 6356, *7; and *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[3] Wyo. Stat. Ann. § 11-21-103(a) states, "Any inspector, game warden or peace officer of the county or state of Wyoming may stop any vehicle carrying livestock, poultry, or carcasses thereof, for the purpose of examining the owner's permit and the contents of the vehicle."

[4] Wyo. Stat. Ann. § 11-21-102 provides, "Any operator or other person in control of any vehicle in transporting livestock, swine or domestic fowls, or the carcasses thereof, upon demand of any peace officer of Wyoming, shall exhibit his permit to carry the animals or domestic fowls or carcasses thereof."

No. 10-5 at 1; ECF No. 10-8 at 2-3. Rammell was unable to produce the required paperwork to Huffman; and Huffman issued Rammell a citation for the five horses in violation of Wyo. Stat. Ann. § 11-21-104[5]. ECF No. 2 at 4; ECF No. 10-2 at 4-5. The charges were later amended to only four counts. ECF No. 10-8 at 3.

The circuit court in Sublette County, Wyoming, conducted the initial proceedings in the criminal case. Rammell filed a motion to suppress and motion in limine, arguing: (1) the constitutionality and legality of the statute; and (2) the lack of probable cause or reasonable suspicion for the initial stop was in violation of his Fourth Amendment rights as guaranteed by the United States Constitution. ECF No. 10-5 at 2-3. The State of Wyoming opposed the motion to suppress and argued an administrative or regulatory "special need" exception, i.e. brand inspection and spread of livestock disease, applied—therefore the statute and stop fell outside the Fourth Amendment rubric set out in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.*

A magistrate granted the motion to suppress. It was later discovered the magistrate was not properly appointed and did not have jurisdiction. A circuit court judge reviewed and approved the initial ruling of the magistrate, but the county attorney and the Attorney General of Wyoming disagreed with the circuit court's ruling and appealed. The appeal went to the District Court for Sublette County, where the court found:

(1) the initial order granting Rammell's motion to suppress by the magistrate was

   null and void since the magistrate was not properly appointed;

---

[5] Wyo. Stat. Ann. § 11-21-104 states, "Any person who knowingly exhibits or causes to be exhibited to any peace officer any false or forged permit, or who upon request of any peace officer of Wyoming, refuses or neglects to exhibit a permit, shall be punished as provided in W.S. 11-1-103." The penalty for violating this statute is imprisonment of not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00) or both for a first offense. W.S. § 11-1-103.

> (2) the circuit court mistakenly placed the burden on the State of Wyoming to prove a statute was constitutional [ECF No. 10-5 at 9-10]; and
>
> (3) the circuit court should apply the *New York v. Burger*, 482 U.S. 691 (1987) test to determine if the stop in question should be treated as an administrative or regulatory "special need" exception. ECF No. 10-5 at 11-13.

The case was remanded to the circuit court with the instruction to apply the *Burger* analysis for the motion to suppress and to shift the burden onto Rammell regarding the constitutionality of the statute in question. *Id*. The circuit court proceeded as directed by the district court and determined the traffic stop fell within the administrative or regulatory "special need" exception. ECF No. 10-6. Furthermore, the circuit court determined Rammell failed to prove the statute was unconstitutional. ECF No. 10-6 at 3. During these proceedings, Rammell admitted if the statute was constitutional, he would not have any defense to the charges. ECF No. 10-5 at 3.

On May 26, 2021, Rammell went to trial in his criminal case and a jury returned a guilty verdict on all four counts. ECF No. 10-7. The court sentenced Rammell to a suspended jail sentence, fines and costs totaling $1,255.00, and six months of probation. *Id.* Rammell appealed his conviction to the District Court for Sublette County. The district court conducted a detailed analysis of the *Burger* case and reviewed the circuit court's analysis on whether Wyo. Stat. Ann. § 11-21-103(a) fell within the requirements to constitutionally qualify as an administrative exception to the Fourth Amendment. ECF No. 10-8 at 4-10. The district court went on to provide further details into the legislative intent, the Wyoming Constitution, and the governmental purpose behind the brand inspection statute. ECF No. 10-8 at 16-18. The district court found no error and affirmed the lower court's ruling. *Id*. Rammell did not appeal the district court's decision to the Wyoming Supreme Court or the United States Supreme Court.

Separately, Plaintiff brought a Declaratory Judgment Action in the District Court of Sublette County to argue the unconstitutionality of Wyo. Stat. Ann. § 11-21-103(a). ECF No. 10-9. The district court dismissed Plaintiff's declaratory judgment action with prejudice based on judicial economy and the district court's affirmation of Rammell's conviction in his criminal case. ECF No. 10-9 at 4-5.

After being denied relief in both his declaratory judgment action and his criminal case, Plaintiff initiated the instant case in the U.S. District Court for the District of Wyoming pursuant to 42 U.S.C. § 1983.

### III. LEGAL ANALYSIS

#### A. *Pro Se* Plaintiff

Plaintiff filed his action *pro se*. The Court must construe a *pro se* plaintiff's allegations liberally. *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). A "less stringent standard" applies to review of a *pro se* complaint and its claims than to a pleading drafted by an attorney. *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006); *Sheridan v. United States,* 214 Fed. Appx. 857, 858 (10th Cir. 2007). If a complaint can reasonably be read to state a valid claim, the court should do so despite a plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, . . . or his unfamiliarity with pleading requirements." *Id.* at 859 (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

#### B. 42 U.S.C. § 1983

Under a § 1983 civil action, a person may claim a violation of Constitutional rights and liberties if an actor acting under "color of [state] law," deprives another of Constitutional "rights, privileges, or immunities." 42 U.S.C.S. § 1983 (2023). The statute creates tort liability for people who deprive another of "rights, privileges, or immunities secured to them by the Constitution."

6

*Memphis Community School Dist. V. Stachura,* 477 U.S. 299, 305-06 (1986) (citations omitted). "A plaintiff may seek damages for out-of-pocket" and monetary harms, harm to reputation, humiliation and mental anguish and suffering. *Id*. at 307 (citations omitted). A violation of an individual's Fourth Amendment right to be free from unreasonable searches and seizures is recognized as grounds for a § 1983 action.

### C. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), dismissal of a claim is mandatory when there is a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When jurisdiction is challenged, the court must first address this issue before resolving any other issue on the merits. *Davis v. Garcia,* 573 Fed.Appx. 689, 692 (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998)). The party asserting subject matter jurisdiction has the burden of establishing it by a preponderance of the evidence. *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). Defendants cite the *Rooker-Feldman* Doctrine and Fed. R. Civ. Proc. R. 12(b)(1) for reasons why dismissal of Plaintiff's Amended Complaint is appropriate. ECF No. 10 at 6.

Federal Courts are courts of limited jurisdiction, and

> [u]nder [*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)] and subsequent Supreme Court decisions refining the doctrine, lower federal courts **do not have subject-matter jurisdiction** over actions in which a plaintiff seeks, in effect, appellate review of a prior state-court judgment awarded against the plaintiff.

*Copeland v. C.A.A.I.R.*, 2023 U.S. App. LEXIS 10606, *4 (10th Cir. 2023) (emphasis added) (finding that a reversal of state-court judgment is only to be reviewed by the U.S. Supreme Court.). The *Rooker-Feldman* Doctrine "precludes subject-matter jurisdiction in lower federal courts . . . in cases brought by state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting [federal] district court review and rejection of those judgments." *Id.* at *17 (quotation and citation omitted).

> A Rule 12(b)(1) challenge to subject matter jurisdiction can be either facial or factual. A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." A factual attack goes beyond allegations in the complaint and challenges the facts on which subject matter jurisdiction depends. When reviewing a factual attack, a court "may not presume the truthfulness of the complaint's factual allegations," and may consider affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1) without converting the motion to a summary judgment motion.

*Ratheal v. United States,* No. 20-4099, 2021 WL 3619902, *3, 2021 U.S. App. LEXIS 24405, *8 (10th Cir. 2021) (citing *Holt v. United States*, 46 F.3d 1000, 1002-3 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States,* 531 U.S. 425, 437 (2001)). The Court considers Defendants' Motion a factual attack on the claims in the Amended Complaint based on the Motion challenging whether the Plaintiff was provided an opportunity to be heard on his claims.

In *Exxon Mobil Corp v. Suadi Basic Industries Corp.,* 125 S.Ct. 1517 (2005)*,* the Supreme Court narrowed the types of cases in which the *Rooker-Feldman* doctrine could limit the jurisdiction of federal courts. After a lengthy period during which the lower courts greatly expanded the applicability of the *Rooker-Feldman* doctrine, the United States Supreme Court revisited the issue in *Exxon*—dispelling the belief that all events within the state court purview were outside federal district court review. The Supreme Court held that the *Rooker-Feldman* doctrine, which had relied on the statute granting the Supreme Court sole appellate jurisdiction over state-court judgments, does not

> stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there

> is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Id.* at 1527 (citation and quotations omitted).

The *Rooker-Feldman* doctrine bars jurisdiction when four requirements are met: "(1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment." *Graff v. Aberdeen Enterprizes, II, Inc.* 65 F.4th 500, 514, (10th Cir. 2023) (citing *Bruce v. City & Cnty of Denver,* 57 F.4th 738, 746 (10th Cir. 2023)). Plaintiff's claims must be considered separately. *Id.* at 515.

In this case, Rammell has made four claims for damages. This Court will analyze subject matter jurisdiction for each claim. The first is a claim for "court costs $1255." ECF No. 2 at 5. Applying the four requirements to this claim, the Court finds that: (1) Rammell lost in state court, (2) the judgment caused Rammell damages of $1255, (3) the state court judgment was rendered prior to Rammell's filing of the federal claims on March 28, 2023, and (4) by asking for the amount of fines and court costs, Rammell is asking this Court to review and reject the state court's judgment. As to the fourth element, this claim can only prevail if the state-court order was unlawful. *See Campbell v. City of Spencer,* 682 F.3d 1278, 1284 (10th Cir. 2012); *see also Lennon v. City of Carmel, Indiana*, No. 1:15-cv-02072-JMS-MJD, 2016 WL 5851595, *13, 2016 U.S. Dist. LEXIS 138766, *41-42 (S.D. Ind. Oct. 6, 2016), *modified and aff'd,* 865 F.3d 503 (7th Cir. 2017) ("to the extent Plaintiffs seek monetary damages to directly compensate them for the fines they paid in connection with their judgment, the *Rooker-Feldman* doctrine bars recovery. The source for this type of damage is the state court judgment itself, making the *Rooker-Feldman* doctrine directly applicable"). Therefore, the Court finds it lacks subject matter jurisdiction over Rammell's first claim and thereby dismisses the claim with prejudice.

Rammell's next three claims appear to stem from allegations of damages from "lost opportunity", "the negative publicity of his fight against the violation of his 4th Amendment rights [and] for the loss of reputation and emotional distress from this incident." ECF No. 10 at 5. These are proper compensatory damages claims in a § 1983 action. *See Memphis Community School Dist. V. Stachura,* 106 S. Ct. 2537, 2542-43 (1986) and cases cited therein. Analyzing these claims under the four *Rooker-Feldman* requirements, the court finds that, for the first three requirements, the findings are the same as for the claim for the fine and court costs. However, for the fourth element, the court finds that the damages do not stem from the judgment itself. While the damages may arise from the same issue as was decided in the state court judgment, the judgment itself did not cause the injuries claimed. *See Lennon v. City of Carmel*, 865 F.3d 503 (7th Cir. 2017). Therefore, the Court finds that it does have subject matter jurisdiction over the remaining three claims.

Having found that jurisdiction is proper, the Court must now analyze the remaining grounds for dismissal of the action.

### D. Federal Rule of Civil Procedure 12(b)(6)

Defendants move to dismiss the claims pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Defendants argue that the Plaintiff's "Fourth Amendment Claim" is barred by collateral estoppel because the issues he raised in the instant case regarding the constitutionality of the Wyoming statute were previously litigated in state court. ECF No. 10, p. 6-9.

> A motion to dismiss under Fed. R. Civ. P. 12(b)(6) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations. The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.

10

*Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (citations and quotations omitted). ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. . . However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Id*. at 1264, n.24). Here, the procedural background of Plaintiff's underlying case is taken as factual and plead within Plaintiff's own Amended Complaint, the Court also reviewed the underlying state court orders attached to the Defendants' Joint Motion to Dismiss for the facts and the claims within each. The Court will not accept any conclusory allegations pleaded within the Amended Complaint [ECF No. 2], nor the Opposition [ECF No. 12].

In federal court, a state court judgment has the same preclusive effect as it would in its own state court system and state law regarding preclusion should be applied in the determination. *Campbell v. City of Spencer,* 777 F.3d 1073, 1077 (10th Cir. 2014) (citations omitted). Collateral estoppel, also known as issue preclusion, prohibits relitigating previously litigated issues. *Lower v. Peabody Powder River Services, LLC,* 459 P.3d 443, 447 (Wyo. 2020) (citations omitted). Under Wyoming law, four factors are to be considered to determine if the doctrine applies:

> (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id*. (quoting *Carson v. State ex. rel., Wyoming Workers' Safety and Compensation Div.*, 322 P.3d 1261, 1265 (Wyo. 2014).

Applying those factors to this case, the Court makes the following findings:

Rammell's Amended Complaint states he is suing the Defendants for a violation of his Fourth Amendment rights, specifically challenging the constitutionality of Wyo. Stat. Ann. § 11-21-103(a). ECF No. 10 at 3-4. Rammell sets forth the facts that occurred on June 27, 2019, during the traffic stop that was at issue in the state court litigation. *Id*. While he attempts to distinguish the claims by saying one is for damages while the other was a motion to suppress, he confuses the issue with the requested remedy. Therefore, under the first factor, the Court finds the issue presented in the instant action, the constitutionality of the Wyoming statute, is identical to the issue in the state court action. *See* ECF. No. 10-3. Regarding the second factor, the prior judgment did result in a decision on the merits. *See* Order Denying Defendant's Motion to Suppress [ECF. No. 10-6]; Judgment and Sentence [ECF. No. 10-7]; Appeal From the Circuit Court of the Ninth Judicial District, Sublette County, State of Wyoming [ECF No. 10-8]. Considering the third factor, the Court finds that Rammell, as the party against whom collateral estoppel is asserted in this action, is the identical party—i.e., the defendant in the prior state court action. While Rammell's response states "no party affiliation existed" he explains no further and the Court can discern no cogent argument. He is clearly the same party from both actions. And finally, the Court finds regarding the fourth factor that Rammell did have a full and fair opportunity to litigate the issue in state court, he just did not agree with the outcome. Not only did he litigate the issue in circuit court, but he also availed himself of the appellate process and further litigated the issue to the district court, again disagreeing with the outcome. Rammell then chose not to continue to appeal any further, but certainly could have.

Therefore, the Court finds that Rammell's remaining claims should be dismissed with prejudice based upon collateral estoppel and the doctrine of issue preclusion under Rule 12(b)(6).

### E. Qualified Immunity

Although the Court has found grounds to dismiss all of the Plaintiff's claims, the Court will also address the Defendants' arguments for dismissal based on qualified immunity. Defendants claim even if Plaintiff's allegations survive the 12(b)(1) and 12(b)(6) dismissal analysis, Defendants are protected by the doctrine of qualified immunity. As explained by the Supreme Court, the doctrine of qualified immunity is to balance: "the need to hold public officials accountable when they exercise power irresponsibly[,] and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (overruling the mandatory *Saucier* two-prong analysis and holding the two-step approach of analyzing qualified immunity is no longer a requirement, the analysis may skip the first prong); *but see Miller v. Utah*, 638 Fed. Appx. 707 (10th Cir. 2016) ("the plaintiff must demonstrate both [prongs]."(quotation and citation omitted)).

Qualified immunity is an affirmative defense from suit, rather than a mere defense to liability. *Brown v. Montoya*, 662 F.3d 1152, 1161 (10th Cir. 2011) (citations omitted). Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff. "The plaintiff must demonstrate both (1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Miller v. Utah*, 638 Fed. Appx. 707 (10th Cir. 2016) (quotation and citation omitted).

Under *Pearson*, courts may skip the analysis of whether the plaintiff is asserting a violation under current law and go directly to the second prong of deciphering whether the claimed violated right was a clearly established right for deciding qualified immunity, both prongs must be satisfied for the plaintiff to circumvent a qualified immunity defense. 555 U.S. at 231 (2009). Here, as the

Court explains below, the Plaintiff fails to clearly establish or demonstrate the second factor is satisfied.

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (quotation and citation omitted); *Wise v. Caffey*, 2023 U.S. App. LEXIS 17463, at *18 (10th Cir. July 11, 2023) (to establish there is a constitutional right, "[t]he plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." (quotation and citation omitted)).

Rammell claims his Fourth Amendment right was violated because he was stopped without reasonable suspicion or a warrant, but that generalizes his claim. His facts and claims need to include the livestock trailer he was towing at the time and the livestock within. The Court takes Plaintiff's allegations as true and reviews the threshold question as: whether at the time Plaintiff was being pulled over by Defendant Huffman, there was an established constitutional right allowing Plaintiff to travel with his livestock sans interruption by law enforcement or regulation. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

In *Hope*, the Supreme Court explained the prerequisite for a plaintiff to satisfy the definition of clearly established constitutional right.

> For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Hope*, 536 U.S. at 739 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); and *Mitchell v. Forsyth*, 472 U.S. 511, 535, 86 L. Ed. 2d 411, 105 S. Ct. 2806, n. 12;). As further explained in the

Tenth Circuit's *N.E.L. v. Douglas Cty.*, 740 Fed. Appx. 920, n.18 (10th Cir. 2018), *Hope* is considered the most favorable standard for a plaintiff in a §1983 case—for what qualifies as an apparent and clearly established constitutional right. Both the Supreme Court and Tenth Circuit, have limited *Hope* in more recent §1983 cases, establishing a "robust qualified immunity" standard requiring analogous or on point case law for the clearly established constitutional right. *Id.; see also City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (clearly established laws shall not be defined at a level of generality, rather the rule of law must be abundantly clear for a reasonable officer to know his actions violate the law).

In *City of Tahlequah*, the Supreme Court specifically referenced Fourth Amendment issues arising from interaction with law enforcement.

> It is not enough that a rule be suggested by then-existing precedent; the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Such specificity is "especially important in the Fourth Amendment context," where it is "sometimes difficult for an officer to determine how the relevant legal doctrine, . . . , will apply to the factual situation the officer confronts."

*City of Tahlequah v. Bond*, 142 S. Ct. 9, 11-12 (2021) (quoting *Wesby*, 138 S. Ct. 577, 590 (quoting *Saucier v. Katz*, 533 U. S. 194, 202 (2001)); subsequently quoting *Mullenix v. Luna*, 577 U. S. 7, 12 (2015) (*per curiam*)).

The Court conducted an extensive review for case law regarding livestock in the federal courts, research on the Centers for Disease Control and Prevention and U.S. Department of Agriculture's guidance regarding regulations and the monitoring of livestock health, and Wyoming's own dicta for livestock ownership, regulations, and control of diseases. As appropriately noted in the *Appeal from the Circuit Court of the Ninth Judicial District, Sublette County, State of Wyoming,* written by the Honorable Greg S. Corpening, there is extensive legislative history, reasoning, and explanations regarding the regulatory scheme of Wyoming's

livestock industry and brands. *See* ECF No. 10-8 at 16-18. Further, although Plaintiff may not understand the validity of regulating livestock movement when he is a veterinarian and can determine the health of the livestock he transports, that cannot be said for all people, and to give Plaintiff an exemption, without one being spelled out by the legislature, would be going beyond the dictates of what the judicial branch's role is in our government.

After the spread of coronavirus-19, mad cow disease, avian flu, and other diseases and viruses headlining the news nationally and internationally, the spread of viruses from animals to humans is a serious concern. *See Diseases That Can Spread Between Animals and People*, Centers for Disease Control and Prevention, https://www.cdc.gov/healthypets/diseases/index.html (last accessed 7/25/2023). The regulations regarding branding, inspection, and transportation within the state of Wyoming, and beyond, are heavily regulated by both the state and federal government, which is understandable. Although this Court can see the slippery slope of stopping vehicles without reasonable suspicion, the moment Plaintiff attached the livestock trailer to his truck with livestock within, he fell within the regulatory scheme Wyoming has set forth for all livestock owners. The Plaintiff has not proffered, nor has this Court found, any United States Supreme Court or Tenth Circuit Court case law that would have put the Defendants on notice that their conduct in this instance violated Plaintiff's constitutional rights.

The Court notes the administration exception set out in *U.S. v. Herrera*, 444 F.3d 1238 (10th Cir. 2006), where the court found suppression of evidence garnered from a stop was appropriate since the truck fell one (1) pound shy of the "Kansas regulatory scheme that permits random inspections of certain commercial vehicles." *Id.* at 1240. The Fourth Amendment claim in *Herrera* was upheld since the driver was not on notice that he could be stopped randomly for an inspection. That is not the case here.

This Court is not analyzing whether Plaintiff knew or should have known he fell within the regulatory scheme of livestock ownership by owning horses, but the facts purported in Plaintiff's Amended Complaint [ECF No. 2], his Response to Defendants' Joint Motion to Dismiss [ECF No. 12], and the documents from Plaintiff's underlying criminal case provide a strong sense that Plaintiff knew he had a specific duty to follow the laws set forth by Wyoming statute for livestock ownership. Further, both Defendants in this case were comporting to the legislative statutes of verifying livestock brand permits for livestock being moved across county lines. There is no indication from any case law this Court has found that Defendants violated a clearly established constitutional law when Plaintiff was stopped for a brand inspection permit for his livestock. Plaintiff, who has the burden on this issue, has made no showing beyond general Fourth Amendment law that the Defendants violated a clearly established Fourth Amendment right.

Therefore, both Defendants qualify for qualified immunity against any remaining allegations in Plaintiff's § 1983 Amended Complaint and are immune from suit.

### IV. CONCLUSION

For the reasons stated above, the Joint Defendants' Motion to Dismiss is hereby GRANTED. The Amended Complaint is DISMISSED with prejudice.

DATED this 27th of September 2023.

_Stephanie Hambrick_
STEPHANIE A. HAMBRICK
United States Magistrate Judge